UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS KELLEY,

                  Plaintiff,                  Case No. 11-cv-13116

v.                                  District Judge Victoria A. Roberts
                                  Magistrate Judge Anthony P. Patti

MARC FERGUSON, *et al.*,

                  Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DE 66, 67, 68, and 69)

Table of Contents

I.     RECOMMENDATION:………………………………………………………2

II.    REPORT:…………………….......………………………………………2
      A.    Background …………………………………………………………..2
            1.    The July 30, 2010 Incident………………………………….....4
            2.    The February 3, 2011 Incident…………………………………7
            3.    Oakland County Jail……………………………..……………10
      B.    Standard……………………..……………………………………...12
      C.    Discussion………..………………………………………………13
            1.    Deprivation of Constitutional Rights……………...…………14
               (Individual Defendants)
            2.    Deprivation of Constitutional Rights……………...……………22
                (Municipal Defendants)
             3.    Defendant Bouchard……………………………..………………24
            4.    Conspiracy to Violate Plaintiff's Civil Rights………..……...27
            5.    Tort Claims……………………………………………………28
             6.    Denial of Access to the Court…………...………………...41
            7.    Malicious Prosecution…………………...………………...43

III.   CONCLUSION:……………………………..…………………………46

IV.   NOTICE TO PARTIES REGARDING OBJECTIONS:………...………...47

1

I.     **RECOMMENDATION**:  The Court should **GRANT IN PART AND DENY IN PART** Defendants' Motions for Summary Judgment.  Specifically, the Court should **GRANT IN FULL** the City of Pontiac's Motion for Summary Judgment (DE 66) and Oakland County and Sheriff Bouchard's Motion for Summary Judgment.  (DE 67.)  The Court should **DENY IN PART** the Oakland County Individual Defendants' Motion for Summary Judgment on Plaintiff's False Arrest/False Imprisonment claim as it relates to the July 30, 2010 traffic stop, and limited only to Defendant Pankey.  (DE 68.)  The Court should **GRANT IN PART** the Oakland County Individual Defendants' Motion as to all other Defendants and claims.  (Id.)  The Court should **DENY IN PART** the Pontiac Individual Defendants' Motion for Summary Judgment for Defendants Wheatcroft, McDougal, and Giolitti on Plaintiff's Fourth Amendment and Assault and Battery claims only as they relate to the February 3, 2011 incident.  (DE 69.)  The Court should **GRANT IN PART** the Pontiac Individual Defendants' Motion as to all other Defendants and claims.  (Id.)

II.    **REPORT**

   A.  <u>**Background**</u>

   Plaintiff, a prisoner incarcerated at the Michigan Department of Corrections' Kinross facility, filed this suit *in forma pauperis* pursuant to the PLRA.  The Court

appointed a *pro bono* attorney on October 12, 2012.[1]  (DE 32.)

Plaintiff brings claims against Oakland County and the City of Pontiac ("Municipal Defendants"), along with twenty individuals who were employed by the Municipal Defendants as police officers and sheriff's deputies.  The individual Defendants from the City of Pontiac are Officer Tim Morton,[2] Officer Wheatcroft, Detective McDougal, Sergeant Giolitti, Officer McDonald, Officer Roberts, Officer Garcia, Officer Miller, and Officer Wood ("Pontiac Individual Defendants").  The individual Defendants from Oakland County are Candace Rushton, Kurt Bearer, Derek Myers, Mark Wilson, Scott Howden, Brent Miles, Michael Pankey, and Martin Delagarza ("Oakland Individual Defendants").

Plaintiff asserts constitutional and state law claims arising out of three incidents that took place in 2010 through 2011.  The first incident occurred on July 30, 2010 and involved a traffic stop that resulted in Plaintiff's arrest for malicious destruction of police property ("July 30, 2010 Incident").  The second occurred on February 3, 2011, when officers entered Plaintiff's home on a search warrant and arrested him for drug-related felonies ("February 3, 2011 Incident").  The third incident occurred when Plaintiff's cellmate urinated on his legal materials while

---

[1] Plaintiff's original attorney withdrew from representation on October 3, 2014 (DE 86), but Plaintiff remains represented by counsel.  (DE 89.)

[2] Mr. Morton's name is spelled "Norton" in Plaintiff's Amended Complaint.  The Court will use the name "Morton" as provided in the deposition transcripts.

they were housed at the Oakland County Jail ("Oakland County Jail Incident").  I will address each event in detail below.

### 1.   The July 30, 2010 Incident

The parties tell differing versions of the July 30, 2010 incident.

### a. Plaintiff's Account of the Incident

According to Plaintiff, he was driving his mechanic to visit a friend at the Pinewood Apartments.  (Plaintiff's Dep. 46:9-10, 67-2.)  The friend was not at home, but Plaintiff stopped to use the bathroom at the friend's apartment.  When Plaintiff got back into the driver's seat of his van and started down University Drive, he noticed a pickup truck going the opposite direction.  The pickup quickly swerved into the lane in front of Plaintiff's van.  (Id. at 47:3-6, 67-2.)  The man driving the pickup was wearing a mask and had a gun.  (Id. at 47:11.)  Plaintiff asserts that when the man leaned out the window with his gun, Plaintiff and his mechanic ducked.  Immediately thereafter, the van was hit from behind.  Plaintiff did not know at that point that the collision was between his van and a Pontiac police cruiser driven by Defendant Morton.  At that point, Plaintiff heard the officers say "freeze, hands up," noticed a uniformed officer ("Officer Morton or Norton"), and realized he was being pulled over by the police.  (Id. at 47:20, 52:14.)

4

As soon as Plaintiff opened the door of the customized van, Officer Morton grabbed him and took him to the ground.  (DE 67-2, 54:10.)  At the time, Plaintiff's right arm was in a cast because of broken pinky and ring fingers from an unrelated incident.  An officer, who Plaintiff believes was Defendant Pankey, handcuffed him.  (Id. at 54-15.)  Other officers then began hitting him in the back of his head and kicking him.  Although Plaintiff believes that Defendant Morton hit him, he did not actually see Defendant Morton deliver any blows.  (Plaintiff's Dep. 209:12.)  An individual Plaintiff could not identify due to his mask picked Plaintiff up, bent his already broken fingers and asked, "Where are the drugs?" (Id. at 48:19-25, 54:13-15.)  Plaintiff avers that he complied with the officers' commands throughout the traffic stop.

The officers told Plaintiff he was being arrested for fleeing and alluding, assault on a police officer, resisting arrest, "and a couple more charges."  (Id. at 49:2.)  A sheriff transported Plaintiff to Oakland County Jail ("OCJ").  During the drive, Plaintiff told the sheriff he needed to see a doctor and was told he would see one when he got to the jail.  When he arrived at OCJ, his fingers were purple and the back of his head hurt.  Plaintiff asked to see a doctor or nurse, and was told that he would see a nurse "when we get to you."  (Id. at 67:2)

Plaintiff later learned that Defendants had a search warrant for the Pinewood Apartment he visited.  (Plaintiff's Dep. 69:5-9, DE 67-2, DE 80-13.)  He was

charged only with malicious destruction of police property because of the collision between his van and a Pontiac police cruiser. Plaintiff was acquitted of that charge by a jury at the Oakland County Circuit Court. (Oakland County Register of Actions, DE 69-8.)

### b.  Pontiac Defendants' Account of the Incident

According to the Pontiac Defendants, the Oakland County Narcotics Enforcement Team ("NET"), asked Morton to assist in stopping Plaintiff's vehicle based on an outstanding warrant for Plaintiff's arrest. Officer Morton was in uniform and driving a marked police cruiser, while the NET officers working the case were in plainclothes and driving undercover vehicles. Officer Morton activated his lights and sirens and stopped Plaintiff's van. While Officer Morton walked to the driver's side of the van, Plaintiff backed into Officer Morton's police cruiser. Before he could pull forward to flee, however, NET officers arrived and "boxed-in" his vehicle. (Pontiac Mot. for Summ. J. 3, DE 69.) No other Pontiac Defendants were involved in the July 30, 2010 traffic stop.

### c.  Oakland County Defendants' Account of the Incident

Oakland County Defendants Howden, Pankey, and Miles were present at the July 30, 2010 stop. Defendant Howden, who was working undercover for NET, first saw Plaintiff's van when it was already stopped between a pickup truck and a Pontiac police car. He focused on the passenger side of the vehicle and did not

witness any resistance by the occupant or any excessive force by law enforcement. Defendant Miles parked his vehicle behind the Pontiac police cruiser and saw Plaintiff's van back into the cruiser. He exited his vehicle with his firearm drawn because the suspect "rammed into a patrol car." (Miles Dep. 13:17, DE 80-2.) Defendant Miles assisted with the passenger and did not see what was happening on the driver's side. Defendant Pankey was following Plaintiff's van as part of an ongoing narcotics investigation. He pulled into a parking lot to wait for the Pontiac police cruiser to initiate its overhead lights to stop the van. Defendant Pankey noticed that Plaintiff's van kept slow rolling." (Pankey Dep. 10:13, DE 80-3.) He positioned his own vehicle, the pickup truck, in front of the van to get it to stop. He asserts that he was not wearing a mask, as Plaintiff testified, but that he exited his vehicle carrying his badge and gun. (Id. at 10:21.) Pankey believed that the van's occupants were trying to reach for something. (Id. at 11:3-4.) He then saw the van back into the police cruiser. Pankey got back into his car and moved it forward, so the van could not drive around him. He had no physical contact with the occupants of the van. (Id. at 13:23-25.)

### 2. <u>The February 3, 2011 Incident</u>

The parties' versions of the events differ about the February 2, 2011 incident as well.

### a.  Plaintiff's Account of the Incident

According to Plaintiff, the Oakland County Narcotics Team and Pontiac police officers entered Plaintiff's residence and instructed those inside to put their hands up and get on the ground.  There were four men in the kitchen and only room for three on the floor of the small kitchen.  Plaintiff complied to the extent he was able by getting on his knees.  (Plaintiff's Dep. 97:20, DE 67-2.)  Detective McDougal struck Plaintiff in the eye with what Plaintiff believes to be a butt of a rifle.  (Id. 94:5.)  After an officer handcuffed him, another officer kicked Plaintiff in the testicles.  (Id. at 103:22.)  He asserts that unknown officers kicked him and struck him repeatedly.  One officer choked him and whispered, "Let's see you get out of this one."  (Id. at 114:15-16.)  When he regained consciousness, he was on a living room couch and his left eye had swollen shut.  Detective Ferguson laughed and remarked that Plaintiff "got f—ked up."  (Id. at 132:16-17.)  Detective Ferguson then photographed Plaintiff, calling it a "Kodak moment."  (Id.)  Officers removed items from Plaintiff's home and took his car.  They transported him to OCJ, but a female officer told the escorts he could not be booked without medical clearance.  (Id. at 118:6-7.)  As a result, an officer transported Plaintiff to a hospital before he was booked into OCJ.  At OCJ, he was referred to an eye doctor who advised Plaintiff that his left eye socket was broken.

Plaintiff contends that the search of his home was unlawful.  He asserts that Ferguson had been disciplined for swearing out warrants after searches, which calls into question the Affidavit for Search Warrant of Plaintiff's home on February 3, 2011.

### b.  Pontiac Defendants' Account of the Incident

According to the Pontiac Defendants, on January 26, 2011 and January 28, 2011, a confidential informant working with NET purchased cocaine from Plaintiff's Montana Street address a total of three times.  (Pontiac Individuals' Mot. for Summ. J. 3, DE 69.)  Ferguson then prepared an Affidavit for Search Warrant of Plaintiff's residence at 456 Montana.  A District Court Magistrate for the 50th District signed and authorized the warrant on February 3, 2011.  (DE 80-5.)

Members of Oakland County's NET and the Pontiac Police Department's Special Response Team ("SRT") attended a session to plan their execution of the search warrant on Plaintiff's home.  An hour later, they met with the confidential informant and provided him $2,400.00 to purchase cocaine from the Montana address.  When the confidential informant left the home, officers of the Pontiac SRT entered the house to find three or four men in the kitchen.  The officers ordered the men to get down on the ground.  Three of the four men complied.  Plaintiff, however, was standing in front of a running faucet when officers entered

the room.  When he heard the officers approaching, Plaintiff stepped away from the sink and began moving toward McDougal.  McDougal responded by front-kicking Plaintiff.  (McDougal Dep. 10:4, DE 69-7.)  Wheatcroft grabbed him by the collar and shoulders and brought him to the ground.  (Wheatcroft Dep. 10:18-20, DE 69-6.)  The officers attempted to handcuff Plaintiff, but were not able to at first because he kept his arms under his stomach and chest.  Giolitti and Wheatcroft delivered a series of hard strikes to Plaintiff until they were able to put Plaintiff in restraints.  (Giolitti Dep. 18:16, 19:7-8, DE 80-10, Wheatcroft Dep. 11:21-22, 12:10, DE 80-9.)  As a result of this incident, Plaintiff was charged with and convicted of drug-related felonies.

### c.  Oakland County Defendants' Account of the Incident

Defendants Rushton, Bearer, Myers, Wilson, Miles, and Pankey were all present for the February 3, 2011 raid on Plaintiff's home.  The Oakland County Defendants testified that they did not enter Plaintiff's home until the Pontiac police force had secured all of the individuals inside.  Nor did they observe any use of force against Plaintiff or the other occupants of the home.  (Oakland County and Sheriff Bouchard's Mot. for Summ. J. 8-14, DE 67.)

### 3.    <u>Oakland County Jail</u>

Plaintiff indicates that various defendants denied his access to medical care and legal materials during his time at OCJ.  Plaintiff avers that he was in fear for

10

his life due to a mentally unstable roommate who urinated on his legal materials. Plaintiff asserts that he brought his roommate's instability to the attention of prison personnel, but they did not address the situation appropriately.

Plaintiff brings eleven counts against Defendants based on the three incidents:

1)   Deprivation of Rights Constitutional Rights (Individual);

2)   Deprivation of Constitutional Rights (Pontiac and Oakland);

3)   Supervisory Liability (Sheriff Bouchard);

4)   Gross Negligence;

5)   Conspiracy to Violate Plaintiff's Civil Rights;

6)   Assault and Battery;

7)   False Arrest/False Imprisonment;

8)   Intentional Infliction of Emotional Distress;

9)   Denial of Prisoner's Access to the Court;

10)   Malicious Prosecution (State Law); and

11)   Malicious Prosecution in Violation of the Fourth Amendment.

Plaintiff seeks damages of at least $75,000, plus interest, costs, and attorney fees. Additionally, he requests exemplary damages and any further relief the Court deems proper.

This matter is before the Court for consideration of Defendants' four pending Motions for Summary Judgment.  The motions are as follows:  City of Pontiac's Motion for Summary Judgment (DE 66), Oakland County and Sheriff Bouchard's Motion for Summary Judgment (DE 67), Ferguson, Pankey, Bearer, Miles, Rushton, Wilson, Howden, Myers, Delagara, and Sheltrowne's Motion for Summary Judgment ("Oakland Individual Motion") (DE 68), and Morton, Wheatcroft, McDougal, Giolitti, McDonald, Roberts, Garcia, Miller, and Wood's Motion for Summary Judgment ("Pontiac Individual Motion") (DE 69).  For the reasons that follow, the Undersigned recommends that the Defendants' Motions for Summary Judgment be **GRANTED IN PART AND DENIED IN PART**.

### B.  <u>Standard</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."

*Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### C. <u>Discussion</u>

Plaintiff brings his claims against individual Defendants and against the City of Pontiac and Oakland County. The Court will address each of Plaintiff's claims in turn.

### 1. <u>Deprivation of Constitutional Rights (Individual Defendants)</u>

Plaintiff asserts claims against the individual Defendants under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. To establish a viable claim under § 1983, a plaintiff must establish that he or she was deprived of a right "'secured by the Constitution and the laws of the United States' by one acting under color of law." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978)). "[E]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Here, Plaintiff asserts that Defendants acted with malice to deprive Plaintiff of his liberty or property without due process of law in violation of the Fourteenth Amendment. He also contends that Defendants deprived him of the right to be free from unreasonable searches and seizures, to be free from excessive force, and to be secure in his person in violation of the Fourth Amendment. (Amended Compl. ¶ 65, DE 40.)

### a.   Fourteenth Amendment Claim

Defendants assert that Plaintiff's Fourteenth Amendment claims do not rise to the level of a violation of Plaintiff's due process rights.  They posit that Plaintiff's Fourteenth Amendment claim is "misplaced in this lawsuit" and should instead be asserted under the Fourth Amendment.  (Pontiac Individuals' Mot. for Summ. J. 6, DE 69.)  Plaintiff does not specifically address the due process claim in his Response in Opposition.

The Due Process Clause of the Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  Here, Plaintiff's claim under the Fourteenth Amendment is unclear.  He simply asserts that he was "deprived of liberty or property without due process of law, as secured by the 4th and 14th Amendments" and that he was deprived of the "right to be free from unreasonable searches and seizures, excessive force, and to be secure in his person as provided by the 4th and 14th Amendments."  (Amended Compl. ¶ 65.)  His pleadings do not specify how this occurred or which police actions constitute such a deprivation.  Plaintiff also fails to elaborate on his Fourteenth Amendment claim in his Response to Defendants' Motions for Summary Judgment.

To the extent Plaintiff purports to bring his claims under the Fourteenth Amendment, the Undersigned agrees with Defendants that Plaintiff's § 1983

claims are more appropriately addressed under the Fourth Amendment.[3]  The

United States Court of Appeals for the Sixth Circuit denied a similar Fourteenth

Amendment claim by concluding, "it is the Fourth Amendment which establishes

procedural protections in this part of the criminal justice area." *Radvansky v. City

of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005); *see also Scott v. Clay Cnty.,

Tenn.*, 205 F.3d 867, 877 (6th Cir. 2000) ("Constitutional tort claims against state

actors undergirded by allegations of excessive force are properly assessed under

Fourteenth Amendment due process guarantees if the plaintiff had been a non-

targeted innocent third party collaterally injured by an assertion of official force").

Thus, the Undersigned will analyze Plaintiff's constitutional claims under the

Fourth Amendment.

### b.   <u>Fourth Amendment Claim</u>

### i.   <u>Factual Dispute as to Excessive Force</u>

Plaintiff contends that Defendants used excessive, unauthorized force and

unlawfully seized him during both the July 30, 2010 and February 3, 2011

incidents.  Plaintiff avers that he complied with the officers' commands and they

continued to hit, kick, and choke him, even when he was restrained in handcuffs or

otherwise unable to flee or resist.  Defendants respond that Plaintiff's Fourth

---

[3] In his Amended Complaint, Plaintiff mentions briefly that prison officials denied him medical care.  (DE 40, Amended Compl. ¶ 29.)  However, Plaintiff does not assert any claims under the Eighth Amendment. As such, the Court will not address an access to medical care claim under the Eighth Amendment.

Amendment claim must fail for several reasons.  First, the Oakland County Defendants posit that Plaintiff has failed to identify any force used against him by the Oakland County Officers.  The Pontiac Defendants assert the same with respect to Defendants McDonald, Wood, Roberts, Miller, Garcia, and Morton.  In addition, the remaining officers, Defendants assert, are entitled to qualified immunity because their actions were objectively reasonable.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Cox v. Treadway*, 75 F.3d 230, 236 (6th Cir. 1996) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)).  The Court must assess the reasonableness of the officers' actions objectively, from the perspective of a reasonable officer on the scene and without the benefit of hindsight.  *Graham*, 490 U.S. at 396.  The Court must also account for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving" in their consideration to use force.  *Id.* at 397.

Additionally, "[a]n officer making an investigative stop or arrest has 'the right to use some degree of physical coercion or threat thereof to effect it.'"  *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (quoting *Graham*, 490 U.S. at 395-96).

In assessing the objective reasonableness of force used, the Court must consider the following factors:

> 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officers or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.

*Grawey v.Drury*, 567 F.3d 302, 310 (6th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

As a preliminary matter, the Undersigned concludes that Plaintiff does not identify any facts to indicate that the Oakland County Defendants used force against him during either incident. Plaintiff was unable to identify any of the individuals he alleges to have used force against him during the traffic stop. Nor does he allege that any of the Oakland County Defendants used force against him during the February 3, 2011 incident. Similarly, Plaintiff does not adduce any evidence to support excessive force claims against Pontiac Defendants McDonald, Wood, Roberts, Miller, and Garcia, and Morton. Accordingly, the Undersigned recommends that the Court grant summary judgment on Plaintiff's excessive force claim as it pertains to those Defendants. Because the only Defendants remaining are those who were not part of the July 30, 2010 incident, the excessive force analysis in the instant case is limited to Plaintiff's allegations against Pontiac Defendants Wheatcroft, McDougal, and Giolitti during the February 3, 2011 raid on his Montana Street home.

18

In his deposition, Plaintiff avers that when the officers entered his kitchen on February 3, 2011, he complied with their commands that he freeze, raise his hands, and get on the floor.  (DE 67-2, 91:23-24.)  He indicates that he was unable to lie on the floor because his kitchen was too small and there were three other people on the ground.  Instead, Plaintiff got down on his knees and faced the door with his hands up.  He recounts that Giolitti began to hit him while McDougal kicked him repeatedly.  Plaintiff states that the officers choked him while he was lying prone and in handcuffs.  (Id. 93:3-17.)

Although Defendants Wheatcroft, McDougal, and Giolitti all testify to using some level of force against Plaintiff, they contest his version of the events. McDougal asserts that, while he did front-kick Plaintiff, it was because Plaintiff was standing instead of complying with the officers' commands to get on the ground.  (McDougal Dep. 10:4, DE 69-7.)  Similarly, Wheatcroft testifies to grabbing Plaintiff by the collar and forcing him to the ground because Plaintiff was noncompliant.  (Wheatcroft Dep. 10:18-20, DE 69-6.)  In addition, Wheatcroft and Giolitti testify to using a series of "hard-hand" strikes in order to gain control over Plaintiff.  (Giolitti Dep. 18:16, DE 80-10, Wheatcroft Dep. 12:10, DE 80-9.)  They contend that the force they used was reasonable because Plaintiff was standing when they entered the room and repeatedly resisted their attempts to handcuff him.

This is sufficient to create a genuine dispute of material fact to survive summary judgment as to Defendants Wheatcroft, McDougal, and Giolitti. In the instant case, the parties dispute whether Plaintiff was a threat to the officers' safety, whether he was compliant with the officers' reasonable demands under the circumstances, and whether he was actively trying to evade arrest. According to Plaintiff, he was handcuffed and/or complying with the officers' commands. A reasonable jury could conclude that continued use of force against Plaintiff under those circumstances was excessive, in violation of the Fourth Amendment.

## ii. <u>Qualified Immunity</u>

Defendants' argument that they are entitled to qualified immunity also fails when viewing the facts in the light most favorable to Plaintiff. The Court conducts a two-step analysis in assessing qualified immunity. First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). During the analysis, the Court must view the facts in the light most favorable to the plaintiff. *Id.* The Sixth Circuit recently laid out the Court's analysis of qualified immunity as follows:

> To deny qualified immunity, the court need not conclude that the inferences drawn by the Plaintiff are the only reasonable inferences that could be drawn, but must simply find that the inferences drawn are reasonable and not blatantly contradicted.

*Harris v. Lasseigne*, No. 14-1033, slip. Op. at 6 (6th Cir. Feb. 4, 2015) (citing *Younes*, 739 F.3d 885, 889 (6th Cir. 2014) (finding that police officers' statements contradicting the plaintiff's version of events were "not the type of evidence in the record which 'utterly discredits'" the plaintiff's evidence for the purpose of reviewing qualified immunity)).

Viewing the facts in the light most favorable to Plaintiff, the Undersigned concludes that Defendants are not entitled to qualified immunity.  First, as addressed above, Plaintiff has set forth enough evidence for a reasonable jury to conclude that Defendants used excessive force against Plaintiff.  Second, "[t]he right of people who pose no safety risk to the police to be free from gratuitous violence during arrest" is clearly established in the Sixth Circuit.  *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006).  Finally, Defendants' statements contradicting Plaintiff's version of the events are not sufficient to utterly discredit plaintiff's evidence.  The Undersigned therefore recommends that the Court deny summary judgment on Plaintiff's Fourth Amendment claim against Defendants Wheatcroft, Giolitti, and McDougal with respect to the February 3, 2011 incident.

## 2. Deprivation of Constitutional Rights (Municipal Defendants)

Plaintiff contends that the Municipal Defendants engaged in a custom, pattern, and/or practice of failing to safeguard against unconstitutional conduct, failing to take disciplinary action, and failing to supervise and/or train officers and deputies who engaged in unconstitutional conduct. He asserts that the Municipal Defendants were aware that a substantial risk of harm existed and therefore demonstrated deliberate indifference to that risk, which caused Plaintiff's injury.

The Municipal Defendants counter that Plaintiff fails to provide competent evidence to support his assertions. Specifically, according to the Municipal Defendants, Plaintiff supports his allegations on the basis of a single incident – his own. In his Response, Plaintiff restates the allegations from his Complaint. (Mem. in Opp. 29, DE 80.)

A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." *Monell v. Dep't Servs. of City of New York*, 436 U.S. 658, 694 (1978). A local government is not liable under § 1983, however, "for an injury inflicted solely by its employees or agents." *Id.* Inadequacy of police training may subject a local government to liability under § 1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City*

*of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  To prevail on a failure to train claim, Plaintiff must show "'prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'"  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Plaintiff has not set forth any facts to show prior instances of similar unconstitutional conduct.  Although he alleges a long standing custom, pattern, or practice of deliberate indifference, he points only to his own interactions with the officers of the Municipal Defendants as evidence to support his claims.  A single incident is insufficient is establish *Monell* liability under § 1983.  *See, e.g., City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985) ("where the policy relied upon is not itself unconstitutional, considerably more proof than a single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation."); *Mann v. Helmig*, 289 F. App'x 845, 851 (6th Cir. July 16, 2008) (concluding that the plaintiff could not "simply rely on one incident" to satisfy his summary judgment burden);  *Jordan v. City of Detroit*, 557 F. App'x 450, 457 (6th Cir. Feb. 21, 2014) ("A single instance, without more, does not amount to a custom, policy or practice.").

In support of this theory of liability, Plaintiff points to the deposition of Detective Wolowiec (a non-party to this lawsuit) to show that officers are not required to undergo additional narcotics training to be part of NET. (Mem. in Opp. 5, DE 80, 80-11.) Detective Wolowiec states, however, that he underwent training from Oakland County. (Wolowiec Dep. 9:22, DE 80-11.) The Pontiac Defendants also provided evidence of their training programs and attendance records related to handling traffic violations and high risk stops, crash and impound training, critical incident response policy, and non-lethal weapons policy. (DE 66-2.) Plaintiff cannot rely solely upon the incidents alleged in his Complaint as evidence of the Municipal Defendants' liability under § 1983, nor is he able to point to prior instances of unconstitutional conduct demonstrating that the municipalities ignored a history of abuse or were otherwise on notice that training in the area was deficient. Accordingly, the Undersigned recommends that the Court grant the Municipal Defendants summary judgment on Plaintiff's claims.

### 3.   Defendant Bouchard

#### a.  Liability for § 1983 Claim

In his Complaint, Plaintiff asserts that Sheriff Bouchard "implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of each Oakland Defendant." (Amended Compl. ¶ 83, DE 40.) Oakland County contends that Plaintiff's claims against Sheriff Bouchard amount to a claim for

*respondeat superior* liability, and as such are not valid under § 1983.  (Oakland

Mot. for Summ. J. 21, DE 67.)  Specifically, Oakland County argues that Plaintiff

did not allege that Sheriff Bouchard was "aware of or in any way participated" in

the three incidents.  Plaintiff does not address his claims against Sheriff Bouchard

in his Response to Defendants' Motions for Summary Judgment.  (DE 80.)

"*Respondeat superior* or vicarious liability will not attach under § 1983."

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  Instead, liability under

§ 1983 '"must be based on more than . . . the right to control employees."'

*Comstock v. McCrary*, 273 F.3d 693, 712-713 (6th Cir. 2002) (quoting *Shehee v.*

*Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  Specifically, the United States Court

of Appeals for the Sixth Circuit has addressed the requirements for supervisory

liability to attach under § 1983 as follows:

> [A] supervisory official's failure to supervise, control or train the
> offending individual is not actionable unless the supervisor "either
> encouraged the specific incident of misconduct or in some other way
> directly participated in it.  At a minimum a plaintiff must show that
> the official at least implicitly authorized, approved, or knowingly
> acquiesced in the unconstitutional conduct of the offending officers."

*Shehee*, 199 F.3d at 300*. (quoting *Hays v. Jefferson Cnty., Ky.,* 688 F.2d 869, 874

(6th Cir. 1982)).

The Undersigned finds no genuine dispute of material fact related to

Plaintiff's claims against Sheriff Bouchard.  In his Complaint, Plaintiff merely

offers conclusions that Sheriff Bouchard violated his rights by implicitly

authorizing the unconstitutional conduct of the individual Defendants, failing to

investigate Plaintiff's complaints, and failing to discipline the involved officers.

Plaintiff does not assert that Sheriff Bouchard was involved in the events as they

occurred.  Nor does he proffer competent evidence that Sheriff Bouchard implicitly

authorized, approved, or knowingly acquiesced in the purportedly unconstitutional

conduct of the offending officers.  The Undersigned therefore recommends that the

Court grant summary judgment in favor of Sheriff Bouchard on Plaintiff's § 1983

claims.[4]

### b.  Liability for State Law Tort Claims

Defendants are also entitled to summary judgment to the extent Plaintiff

asserts state law tort claims against Sheriff Bouchard.  Pursuant to MCL

691.1407(5), an elected official is "immune from tort liability for injuries to

persons or damages to property if he or she is acting within the scope of his or her .

. . executive authority."  Mich. Comp. Laws. § 691.1407(5).  Sheriff Bouchard is

an elected official and was acting within the scope of his executive authority; as

such, he is immune from liability under the Michigan statute.  *See Glomski v. Cnty.*

*of Oakland*, No. 05-70503, 2007 WL 925681, at *8 (E.D. Mich. Mar. 28, 2007)

---

[4] In his Response, Plaintiff for the first time seems to assert that Ferguson may be
held liable for unconstitutional supervision.  To the extent Plaintiff seeks to raise
such a claim against Ferguson for the first time at this late date – a claim which
was not raised in his Complaint and for which no supporting evidence has been
proffered – the Undersigned recommends that the Court deny the claim.

(holding that Sheriff Bouchard was immune from state law claims of gross negligence and assault and battery).  Accordingly, the Undersigned recommends that Defendants are entitled to summary judgment on the claims against Sheriff Bouchard.

### 4.   Conspiracy to Violate Plaintiff's Civil Rights

Defendants assert that Plaintiff fails to establish a claim for conspiracy because he has merely alleged that reports prepared by one or more of the Defendants contained false information.  Plaintiff asserts that, taking the facts and inferences in his favor, there is circumstantial evidence from which a jury could infer a conspiracy.

A conspiracy claim is actionable under § 1983 where there is "an agreement between two or more persons to injure another by unlawful action."  *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  Plaintiff is not required to show express agreement among all of the conspirators, but must establish:

> that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.*

Applying the foregoing to the instant case, Plaintiff's vague assertions, without more, are insufficient to create a genuine dispute of material fact.  *See, e.g., Alexander v. Caresource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory

statements unadorned with supporting facts are insufficient to establish a factual

dispute that will defeat summary judgment").  Plaintiff asserts that the Defendants

"may be found to have concealed their actions by knowingly adopting Ferguson's

false version of facts as articulated in the Affidavit in Support of a Warrant."

(Mem. in Opp. 13, DE 80.)  Plaintiff does not, however, adduce any evidence to

show that Ferguson's facts in the Affidavit were false.  Nor does he point to any

evidence to indicate the existence of a conspiracy.  The Undersigned recommends

that the Court grant summary judgment to all Defendants on this claim.

### 5.   Tort Claims

#### a.   Gross Negligence

Defendants are entitled to summary judgment on Plaintiff's claim for gross

negligence.  Where a plaintiff's allegations of gross negligence arise from

intentional torts on which he or she bases state-law assault and battery claims,

gross negligence is not an independent cause of action under Michigan law.  *Bletz*

*v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011); *Van Vorous v. Burmeister*, 262 Mich

App. 467, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004); *Wells v. City of Dearborn*

*Heights*, 538 F. App'x 631, 641-42 (6th Cir. 2013).  Here, Plaintiff's gross

negligence claim is based on the same facts as his assault and battery, false

arrest/false imprisonment, and malicious prosecution claims.  (Amended Compl. ¶

89, DE 40.)  The Undersigned will address gross negligence in the analysis of

28

Plaintiff's intentional tort claims and governmental immunity which follows, but recommends that the Court grant summary judgment to Defendants on this independent claim.

### b.    Intentional Torts

Generally, intentional torts are not protected by governmental immunity under Michigan law.  Governmental actions which would normally be considered intentional torts are protected by immunity, however, if those actions are justified. *Brewer v. Perrin*, 132 Mich. App. 520, 529, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984) ("Specifically, a police officer may use reasonable force when making an arrest.").  Governmental immunity is available only when an officer's conduct "does not amount to gross negligence that is the proximate cause of the injury." Mich. Comp. Laws § 691.1407(2)(c).   "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(8)(a).  A defendant's conduct is the proximate cause of the injury when it is '"the one most immediate, efficient, and direct cause preceding an injury."'  *Grabow v. Cnty. Of Macomb*, 580 F. App'x 300, 312 (6th Cir. 2014) (quoting *Robinson v. City of Detroit*, 462 Mich. 439, 459, 613 N.W.2d 307, 317 (2000)).

The Michigan Supreme Court provides the immunity requirements for the intentional torts of lower-ranking governmental employees as follows:

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cnty.*, 482 Mich. 459, 479-80, 760 N.W. 2d 217, 228 (2008)

(citing *Ross v. Consumers Power Co.*, 420 Mich. 567, 631-32, 363 N.W.2d 641,

667 (1984)) (overturned on other grounds by *In re Bradley Estate*, 494 Mich. 367,

384, 835 N.W.2d 545, 554 (2013)); *see also* Mich. Comp. Laws § 691.1407(5).

The parties do not dispute that the officers' acts were undertaken during the course

of employment and that the acts were discretionary, but Plaintiff contends that

Defendants did not act with the requisite good faith and therefore do not meet the

gross negligence standard to entitle them to immunity.

### i. Assault and Battery

Applying the foregoing authority, the Undersigned recommends that the

Court Deny summary judgment to Defendants Giolitti, McDougal, and Wheatcroft

on Plaintiff's Assault and Battery claim with respect to the February 3, 2011

incident.  Defendants assert that they are entitled to summary judgment because

they satisfy the elements of *Odom* and Plaintiff has offered no evidence that

Defendants participated in or caused any offensive touching.  Plaintiff counters

that Defendants Giolitti, McDougal, and Wheatcroft's use of force against Plaintiff was intentional and nonconsensual.

To establish an assault claim, a plaintiff must show an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16, 21 (1991) (citing *Tinker v. Richter*, 294 Mich. 396, 401, 295 NW 201 (1940)). To establish a claim for battery, a plaintiff must show "willful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Id*. citing *Tinker*.

The Undersigned concludes that there are questions of material fact as to whether Defendants Giolitti, McDougal, and Wheatcroft acted in good faith and were grossly negligent during the February 3, 2011 incident. Accepting Plaintiff's version of the facts as true and drawing all reasonable inferences in his favor, he was on the ground in his kitchen, complying or attempting to comply with the officers' orders. All three testified that they intentionally struck or kicked Plaintiff during the raid on his home on February 3, 2011. (DE 80-8, 10:4-5, DE 80-9, 11:21, DE 80-10, 18:16.) Giolitti testified that Plaintiff was not kicking or punching anyone during the raid. (DE 80-10, 28:10-13.) Other officers testified

31

that Plaintiff's eye or face was bloody when he was on the couch as NET and SRT

searched his home.  (*See, e.g.,* DE 67-5, 6:18, DE 67-3, 9:12.)  A reasonable jury

could conclude that Wheatcroft, McDougal, and Giolitti's conduct was so reckless

as to demonstrate a substantial lack of concern as to whether Plaintiff would be

injured and thus was grossly negligent and not taken in good faith.

Plaintiff does not adduce sufficient evidence to create a genuine dispute of

material fact as to any of the other named Defendants.  Plaintiff cannot place the

other Defendants as the individuals who hit, kicked, and threatened him at either

incident.   Accordingly, the Undersigned recommends that the Court deny

summary judgment to Defendants Wheatcroft, McDougal, and Giolitti and grant

summary judgment as to all other Defendants on Plaintiff's claim for assault and

battery.

### iii.  Intentional Infliction of Emotional Distress

Defendants assert that the Michigan Supreme Court has not recognized the

tort of Intentional Infliction of Emotional Distress ("IIED").[5]  Additionally, they

---

[5] While true, this is hardly dispositive.  In 1980, the Michigan Supreme Court
stated, "We express no opinion on the accuracy of the Court of Appeals
observation that Michigan recognizes a tort action for the intentional infliction of
mental distress."  *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 421,
295 N.W.2d 50, 56 (1980).  The court has yet to rule definitively on the cause of
action, one way or another.  *See VanVorous v. Burmeister*, 262 Mich. App. 467,
481, 687 N.W.2d 132, 141-42 (2004).  In contrast, the Court of Appeals has
recognized it as a viable tort since 1986.  *Rosenberg v. Rosenberg Bros. Special
Account*, 134 Mich. App. 342, 350, 351 N.W.2d 563 (1986).  Published opinions of

contend that Plaintiff has not set forth a *prima facie* case. Plaintiff does not

address his claim for IIED in his Response brief.

To establish a claim of IIED, a Plaintiff must show "(1) extreme and

outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe

emotional distress." *Haverbush v. Powelson,* 217 Mich.App. 228, 234, 551

N.W.2d 206 (1996). To be legally actionable, the emotional distress must be "so

severe that no reasonable man could be expected to endure it." *Haverbush v.*

*Powelson*, 217 Mich. App. 228, 235, 551 N.W.2d 206, 209 (1996) (quoting

Restatement 2d Torts § 46).

Regardless of whether Plaintiff intends to pursue a claim of IIED,

Defendants are entitled to summary judgment on this claim for two reasons. First,

Plaintiff fails to proffer any evidence that Defendants' conduct was extreme or

outrageous. Conduct is considered "extreme and outrageous" only if it is "so

outrageous in character and extreme in degree that it goes beyond all possible

bounds of decency and is regarded as atrocious and utterly intolerable in a civilized

society." *Grochowalski v. DAIIE*, 171 Mich. App. 771, 775-76, 430 N.W. 2d 822,

824 (1988). Furthermore, "[i]n the context of an arrest made by police *with*

probable cause, such a showing would seem very difficult . . . ." *Boykin v. Van*

_____

the Michigan Court of Appeals have "precedential effect under the rule of *stare decisis*." Mich. Ct. R. 7.215(c)(2). Thus, the tort is recognized under Michigan common law.

*Buren Township*, 479 F.3d 444, 452 (6th Cir. 2007) (emphasis in original); *see also Watkins v. City of Southfield*, 221 F.3d 883, 890 (6th Cir. 2000) (affirming the district court's decision that, where a traffic stop was justified, the force used by the officers to effectuate the stop did not meet the "extreme and outrageous" standard). Here, all of the events occurred in the context of Plaintiff's arrests, making it difficult for Plaintiff to meet the already high standard. Even accepting Plaintiff's version of the facts as true, Defendants' conduct does not rise to the level of "extreme and outrageous."

Second, Plaintiff has failed to set forth any evidence of his emotional distress. Plaintiff does not adduce facts or evidence indicating his extreme emotional distress resulting from Defendants' actions. Although it is not a condition precedent that he seek medical help to deal with his distress, Plaintiff's testimony that he has trouble sleeping and is angry and depressed does not rise to a level so severe that a reasonable person should not be expected to endure it. Moreover, Plaintiff avers that his depression is in part caused by the fact that he is incarcerated. (DE 67-2, 213:8.) The Undersigned therefore recommends that the Court grant Defendants summary judgment on this claim.

### iii.  False Arrest/False Imprisonment

Defendants assert that Plaintiff's False Arrest/False Imprisonment ("FA/FI") claim must fail because they had probable cause to arrest and detain Plaintiff on

July 30, 2010 and on February 3, 2011.  According to Defendants, they had

probable cause to arrest Plaintiff on the July 30, 2010 incident after he struck the

patrol car and that his conviction establishes probable cause for the February 3,

2011 raid on his home.  Plaintiff counters that Defendant Ferguson made "false or

misleading statements and omitted material information in order to manufacture

probable cause" for both the July 30, 2010 and February 3, 2011 incidents.  (Mem.

in Opp. 11, DE 80.)

It is unclear whether Plaintiff brings his FA/FI claim under Michigan law or

as part of his Constitutional claims.   *See, e.g., Voyticky v. Village of Timberlake,*

*Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ("False arrest claims can be brought under

either federal or state law") (citing *Thacker v. City of Columbus*, 328 F.3d 244, 258

(6th Cir. 2003)).   In any event, the requirements on Plaintiff are substantially the

same.  In order to establish a claim of FA/FI under Michigan law, a Plaintiff must

show "that the arrest was not legal, i.e., that it was made without probable cause."

*Tope v. Howe*, 179 Mich App. 91, 445 N.W.2d 452, 459 (1989) (citing *Lewis v.*

*Farmer Jack Division, Inc.*, 414 Mich. 212, 218, n.2, 327 N.W.2d 893 (1982)).  To

establish a claim of FA/FI under federal law, a plaintiff is required to prove "the

*arresting officer* lacked probable cause to arrest the plaintiff."  *Voyticky*, 412 F.3d

at 677 (emphasis added) (citing *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.

2002)).  "An officer cannot rely, however, on a facially valid warrant as

35

satisfactory evidence of probable cause 'when evidence exists that a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest. . . .'" *Richardson v. Nasser*, 421 F. App'x 611, 616 (6th Cir. 2011) (citing *Voyticky*, 412 F.3d at 677).  The Sixth Circuit has held non-arresting officers liable for false arrest only where the officer is the proponent of an invalid warrant.  *Schulz v. Gendregske*, 544 F. App'x 620, 625 (6th Cir. 2013).

Here, Defendants acknowledge that Ferguson directed officers to follow and stop Plaintiff's van on July 30, 2010, based on the suspicion that he had bought drugs from the Pinewood Apartment that they had under surveillance.  Plaintiff was ultimately arrested for malicious destruction of police property for backing into the Pontiac cruiser; not for drugs.  In his deposition, however, Plaintiff asserts that his van was hit from behind, not that he hit the police cruiser.  (Plaintiff's Dep. 47:16, DE 67-2.)  This is enough to create a genuine dispute of material fact about whether the Defendants had probable cause to arrest Plaintiff.  Even if the initial stop was legal, the propriety of his arrest and imprisonment hinges on who was responsible for the car accident.  Plaintiff was acquitted of the malicious destruction charge by a jury.

The Undersigned recommends granting summary judgment to all Defendants except Pankey on this claim.  In order to establish liability, Plaintiff is required to show that the arresting officer made the arrest without probable cause

or that an officer intentionally provided false information in order to establish probable cause.  The Undersigned has already concluded that there remains a genuine dispute of material fact as to whether the officers had probable cause to arrest Plaintiff for malicious destruction of property in the July 30, 2010 incident.

The parties disagree as to who actually arrested Plaintiff.  Black's Law Dictionary defines "arrest" as "[a] seizure or forcible restraint, esp[ecially] by legal authority."  *Black's Law Dictionary* 130 (10th ed. 2014).  Here, Plaintiff identifies, although with some uncertainty, Defendant Pankey as the officer who forcibly restrained him by putting him in handcuffs.  (Pl. Dep. 54-15.)  Plaintiff's testimony is as follows:

> A.   That's—one officer put the cuffs on me.  That was the one, I believe, that his name is Pankey, the one that was driving the truck.  I think that's who put the handcuffs on me.

(Id. 54:12-15.)  Pankey, however, testifies that, he did not handcuff Plaintiff and does not know who did.  (Pankey Dep. 14:3.)  Defendant Miles, who was also at the scene, does not recall who put Plaintiff in handcuffs, but testifies that Pankey was driving a "black GMC pickup truck."  (Miles Dep. 14:25, 13:2-3.)  The parties do not provide a police report or other documentation relating to the July 30, 2010 incident, so as to further enlighten the Court as to the identity of the arresting officer.

Although the issue is close, Plaintiff has proffered sufficient evidence for a reasonable jury to conclude that he was handcuffed by Defendant Pankey.  He identifies Pankey as the driver of the pick-up truck, a fact which Defendant Miles affirms.  Pankey admits to "g[etting] in front of [Plaintiff's] vehicle," which is consistent with Plaintiff's placement of the pick-up truck.  (Pankey Dep. 10:14, DE 80-3.)  Such evidence is sufficient to deny summary judgment.  *See, e.g., Bettendorf*, 601 F.3d 640, 651 (concluding that the plaintiffs had "advanced ample evidence" that the officer they identified was the one who led the raid by describing him as "the officer with the shotgun," which the officer admitted to carrying); *McFeeter v. Jones*, 104 F. App'x 552, 555 (6th Cir. 2004) (concluding that the plaintiff presented sufficient evidence that two caucasian officers who put him in the cell assaulted him by describing them as "not black").

Pankey is not entitled to qualified immunity on this claim.  The right to be free from arrest without probable cause has been recognized as a clearly established constitutional right.  *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006).  Nor is he entitled to immunity under Michigan law.  Taking Plaintiff's assertions as true, a reasonable jury could conclude that Defendant Pankey was not acting in good faith if he arrested Plaintiff in the absence of probable cause.  The Undersigned therefore recommends that the Court deny summary judgment to Defendant Pankey as it relates to the July 30, 2010 incident.

As Plaintiff fails to identify any other officers who seized or forcibly restrained him, his claim must fail as to all of the other Defendants present at the traffic stop. [6]

The Undersigned also recommends that the Court grant Defendant Ferguson summary judgment for his role in the events of the July 30, 2010 incident. Plaintiff asserts that Defendant Ferguson provided false information in order to establish probable cause which led to the traffic stop. Plaintiff does not, however, proffer competent evidence to make such a showing. Moreover, although Defendant Ferguson directed the other Defendants to stop Plaintiff's car, Plaintiff does not provide evidence to show that he was somehow involved in Plaintiff's subsequent arrest for malicious destruction of police property. Instead, while the parties dispute the events themselves, they agree that Plaintiff was arrested based on the events that occurred during the stop. Plaintiff proffers no competent evidence to suggest that Ferguson "commanded" *his arrest* during the traffic stop. (Mem. in Opp. 11, DE 80.) Plaintiff therefore fails to demonstrate that Ferguson, a non-arresting officer who was not present at the July 30, 2010 traffic stop, intentionally

---

[6] It is unclear whether Plaintiff intends to limit his False Arrest/False Imprisonment claim to Defendant Ferguson. (Mem. in Opp. 10, DE 80.) Plaintiff mentions only Defendant Ferguson in the header of the claim in his Memorandum in Opposition and throughout the body of the analysis, save one mention that a jury could conclude that "defendants made false or misleading statements." (Id. at 11.) Given the uncertainty, the Undersigned will construe the claim as against all Defendants as pleaded in the Amended Complaint.

mislead or omitted information at a probable cause hearing which led to Plaintiff's arrest.

Plaintiff's FA/FI claim fails as it relates to the February 3, 2011 incident. Plaintiff asserts that Defendant Ferguson's affidavit in support of warrant was "patently untrue" and "but for the falsehoods" would not have been issued. (Mem. in Opp. 11, DE 80.) Defendants counter that Ferguson knew that an informant had made the last in a series of controlled buys from Plaintiff's Montana Street address earlier in the day, this information was included in the warrant, and the warrant was signed and authorized by a Magistrate. (DE 80-5.) Plaintiff was convicted of the offense. He has failed to set forth any evidence, other than a similar affidavit in support of the warrant signed by Defendant Ferguson.[7] This is not enough to challenge the validity of the warrant in the February 3, 2011 incident. The Undersigned recommends that the Court grant summary judgment in favor of all Defendants on the FA/FI claim related to the February 3, 2011 raid.

---

[7] Plaintiff provides the Affidavit for Search Warrant sworn out by Defendant Ferguson as it relates to the Pinewood Apartment that Plaintiff visited prior to the July 30, 2010 incident. (DE 13.) The wording and events described are similar to those in the Affidavit sworn out by Defendant Ferguson for the February 3, 2011 search of Plaintiff's home. The similarity, however, does not show that the affidavits were patently untrue. Both Affidavits involved controlled buys by a criminal informant, making some similarity understandable and reasonable.

6.   **Denial of Access to the Court**

Plaintiff asserts that Defendants intentionally prevented his access to legal research and "encouraged or participated in the destruction of his legal documents," which hindered his efforts to pursue a claim.  (Amended Compl. ¶¶ 111-12, DE 40.)  Plaintiff points to a February 2011 incident in which his cellmate urinated on his legal documents while an officer searched his cell.  (Pl.'s Depo. 176; 3-20, DE 69-3.)  He indicates that, because he told jail personnel that his cellmate was "talking about killing people," they had a responsibility to "check him out," which could have avoided the destruction of his legal documents.  (Id. 177:23-25.)

Defendants assert that Plaintiff fails to adduce evidence to set forth a claim of denial of access to the court.  First, they assert that Defendants are not responsible for the cellmate's actions because they were not aware that the cellmate would take the action he did.  Additionally, Plaintiff does not know which officer performed the search of his cell.  Finally, Defendants assert that Plaintiff did not suffer an injury because the materials were printed off a website and his attorney was able to access them.  (Id. 214-215.)  Plaintiff does not address this claim in his Response.

Prisoners have a fundamental right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To establish a denial of access claim:

> [the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury,* 536 U.S. 403, 415 (2002). To meet this 'actual injury' requirement, a plaintiff must show that the actions of the prison officials "hindered . . . [the prisoner's] efforts to pursue a nonfrivolous legal claim." *Lewis v. Casey,* 518 U.S. 343, 343 (1996). Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis,* 518 U.S. at 354. The right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment resulting from the prison official's conduct. *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff fails to adduce sufficient evidence to show a dispute of material fact on this issue. Importantly, Plaintiff avers in his deposition that his attorney had access to the materials that his cellmate destroyed. (DE 67-2, 215:23.) Setting aside the fact that Plaintiff only roomed with his cellmate for "2 or 3 days," that a

42

guard spoke with the man at Plaintiff's request, and that there was no indication any of the Defendants were involved, Plaintiff fails to show that the destruction of the documents injured his legal case.  (Id. at 176:22.)  The Court should therefore grant summary judgment to Defendants on this claim.

### 7.   **Malicious Prosecution**

#### a.   **Fourth Amendment**

To succeed on a malicious prosecution claim under § 1983, a plaintiff must prove the following:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.  Third, the plaintiff must show that, as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment Jurisprudence, apart from the initial seizure.  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-9 (6th Cir. 2010) (internal citations and quotations omitted).  Because the February 3, 2011 incident did not resolve in his favor, Plaintiff's malicious prosecution claim fails as applied to that incident. The July 30, 2010 incident, however, did resolve in Plaintiff's favor.  *See, e.g., Hay v. Evans*, 173 F.3d 428, at *8 (6th Cir. Feb. 2, 1999) (plaintiff's acquittal of the relevant charges terminated the action in his favor for the purpose of § 1983).

Applying the foregoing authority, the Undersigned will first discuss whether Plaintiff has adduced a genuine dispute of material fact as to Defendants' role in initiating Plaintiff's prosecution related to the July 30 incident. A claim for malicious prosecution fails under § 1983 where there is probable cause or "where the defendant did not make, influence, or participate in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237-38 (6th Cir. 2007).

In his Response, Plaintiff limits his Fourth Amendment and state law malicious prosecution claims to Defendant Ferguson. (Mem. in Opp. 17, DE 80.) As support for his malicious prosecution claims against Ferguson related to the July 30, 2010 incident, Plaintiff states the following:

> Plaintiff was charged with malicious destruction of property during incident 1. Plaintiff was acquitted of that charge. Testimony revealed that Marc Ferguson caused the charge in the first incident.

(Mem. in Opp. 13, DE 80.) If such testimony exists in the record, Plaintiff does not provide its location to the Court. Although it is not the Court's responsibility to comb the record for such evidence, the Undersigned reviewed the exhibits to Plaintiff's Memorandum in Opposition in their entirety and could not find support for Plaintiff's theory. While there is evidence in the record that Defendant Ferguson directed Officer Morton to stop Plaintiff's car, Plaintiff provides no evidence that Ferguson "caused the charge" of malicious destruction of police

property.  Notably, Defendant Ferguson does not even discuss the July 30, 2010 incident at any point in his deposition.  (DE 80-6.)

The bulk of Plaintiff's argument relates to the February 3, 2011 incident. Plaintiff asserts that a reasonable jury could find that Ferguson was untruthful in his warrant application, which led to Plaintiff's arrest.  According to Plaintiff, the court found probable cause to prosecute Plaintiff based in part on Ferguson's false testimony.  Although Plaintiff does not cite to an exhibit, presumably this purportedly false information is provided in Ferguson's Affidavit for Search Warrant.  (DE 80-5.)  As discussed before, however, the February 3, 2011 event was not resolved in Plaintiff's favor, which bars a claim for malicious prosecution under *Sykes*.  As Plaintiff has not met his burden on this issue, the Undersigned Recommends that the Court grant summary judgment to Defendants on Plaintiff's claim of malicious prosecution under the Fourth Amendment.

### b.   **State Law**

To establish a claim for malicious prosecution under Michigan law, a plaintiff must show that (1) the defendant instituted prior criminal proceedings against the plaintiff which were terminated in the plaintiff's favor, (2) the defendant lacked probable cause for those proceedings, (3) the defendant acted with malice or with a purpose other than to bring the offender to justice, and (4) the plaintiff suffered a special injury, such as injury to liberty.  *Wilson v. Yono*, 65

Mich. App. 441, 443, 237 N.W.2d 494, 496 (1975); *Friedman v. Dozorc*, 412

Mich. 1, 32, 312 N.W.2d 585, 595 (1981).  Plaintiff's claim for malicious

prosecution fails under state law for the same reasons it fails under the Fourth

Amendment.  Plaintiff has not adduced sufficient evidence to create a genuine

dispute of material fact related to Defendants' actions in prosecuting him for the

July 30, 2010 incident, the only incident that terminated in his favor.  Defendants

are entitled to judgment as a matter of law on this claim.

## III.   CONCLUSION

Accordingly, the Undersigned recommends that the Court take the following

action with respect to Defendants' Motions for Summary Judgment:

- **GRANT IN FULL** the Municipal Defendants' Motions for Summary
  Judgment.  (DE 66 and 67.)

- **DENY IN PART** the Oakland County Individuals' Motion for Summary
  Judgment on Plaintiff's False Arrest/False Imprisonment claim as it relates
  to the July 30, 2010 traffic stop and limited to Defendant Pankey. (DE 68.)

- **GRANT IN PART** the Oakland County Individuals' Motion for Summary
  Judgment on all other Defendants and claims.  (Id.)

- **DENY IN PART** the Pontiac Individuals' Motion for Summary Judgment
  for Defendants Wheatcroft, McDougal, and Giolitti on Plaintiff's Fourth
  Amendment and Assault and Battery claims as they relate to the February 3,
  2011 incident. (DE 69.)

- **GRANT IN PART** the Pontiac Individuals' Motion for Summary Judgment
  on all other Defendants and claims.  (Id.)

## IV.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

47

Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: February 13, 2015          s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE




### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 13, 2015, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti
                                   (313) 234-5200